The Commissioner of Banking and Insurance is in possession of the Harvester Building and Loan Association pursuant to R.S.17:12-65, 17:12-66 to 17:12-80. The complainant, Charles Manshel, is a shareholder of the Association and complains that at a meeting held March 3d 1942, called for the purpose of discussing with the shareholders an offer of $42,500 made by Joseph Schuldenfrei for the purchase of assets of the Association described in the bill of complaint, the Commissioner "arbitrarily and wrongfully deprived the shareholders * * * of $8,100" which they would have received "had the defendant Eugene E. Agger (the Commissioner) awarded the contract to the highest bidder." The bill of complaint charges the Commissioner with "arbitrary abuse of his power."
The cause is by stipulation submitted for final hearing on the bill of complaint and the affidavits annexed thereto, answering affidavits on behalf of the defendants and complainant's affidavits in reply.
The Commissioner after he had received the offer by Joseph Schuldenfrei called a meeting of the shareholders for February 19th, 1942. After explaining the purpose of the meeting certain members objected to the sale at the price mentioned, suggesting that higher offers should be sought. Discussion *Page 446 
followed and a vote was taken and the Commissioner announced that he would accept sealed bids for the assets, and later by letter advised those present at the meeting that he had received and would open sealed bids on Tuesday, March 3d 1942. The meeting was held and the sealed bids received. Among them was a bid from Herman Baum for $59,100. When all the bids were read Baum requested oyer of his bid which was granted and thereupon Baum declared that there was an error and that he intended to submit a bid of $53,100. The Commissioner announced that the figures contained in Baum's bid were plainly set forth and refused to allow him to alter his bid since the amount bid by other bidders had been disclosed. Thereupon Baum requested permission to withdraw his bid which was granted.
The next highest bid in the sum of $51,000 was that of Michael Stavitsky and his bid was accepted, and formal contract prepared and executed on March 12th, 1942, by the Commissioner and Mr. Stavitsky.
The bill prays that the Commissioner be restrained from carrying out this contract and that the contract be canceled and declared null and void.
Complainant's solicitor relies upon R.S. 17:12-76 which provides:
"When an association, of whose property and business the commissioner has taken possession as aforesaid, or any member thereof, deems itself or himself aggrieved by any act of the commissioner done pursuant to sections 17:12-65 to 17:12-80 of this title, the association or the member may, at any time after such taking possession, apply to the court of chancery to enjoin further proceedings. The court, after citing the commissioner to show cause why further proceedings should not be enjoined, and hearing the allegations and proofs of the parties and determining the facts, may, upon the merits, dismiss the application or enjoin the commissioner from further proceedings, or from doing any act which will not be in the best interests of the shareholders or grant such other or further relief as may be equitable."
Under R.S. 17:12-72 "* * * The commissioner may, in the name of the association, sell, convey and assign all or any part of the said estate, rights and interests, including bills, notes and choses in action, and shall hold the proceeds less the costs and expenses of administration and liquidation *Page 447 
and, under the direction of the court of chancery, shall dispose thereof. * * * The commissioner may, in his discretion, apply to the court of chancery for instructions or directions regarding the sale of any property of the association or the compounding of debts or claims. * * *" Thus there was conferred by statute upon the Commissioner the power to sell the assets in question without submitting the offer of purchase to the shareholders or to this court.
It is not deemed necessary here to recite the evidence in detail setting forth all the matters and things which transpired at the meeting of the Commissioner with the shareholders except to say that the evidence discloses that the Commissioner acted with that degree of care expected of him in order to procure for the Association the best obtainable price for the assets. The complainant Manshel was an unsuccessful bidder at the meeting. His bid was $50,500.
The Commissioner of Banking and Insurance possessed of the business and affairs of a building and loan association pursuant to statute, acts as a public officer in the discharge of a public duty, and any act done by him in good faith in the discharge of that duty will not be disturbed by this court, especially where it is sought merely to substitute the court's discretion for that of the Commissioner. There is here no allegation of misfeasance or malfeasance on the part of the Commissioner. The Commissioner was under no duty to submit the offer he had received of $42,500 to the shareholders or to this court.
Vice-Chancellor Berry, in Guenther v. Flink (Docket 111, page 313), unreported, held: "The public policy of this state, as evidenced by the acts of the legislature (herein) referred to, is to commit the supervision and administration of the affairs of building and loan associations exclusively to the Commissioner of Banking and Insurance, and no act of this court should run counter to that policy except in the case of misfeasance or malfeasance amounting to a breach of trust, notwithstanding this court's inherent jurisdiction over all trusts."
While the Commissioner may in his discretion apply to the court for instructions or directions regarding the sale of any *Page 448 
property of the Association, or the compounding of debts or claims, he may also do these acts without the court's approval.Reilly v. Falcon Building and Loan Association, 128 N.J. Eq. 339; 17 Atl. Rep. 2d 75.
The bill of complaint will be dismissed.